USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03 JUN 2011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

YVONNE HANRATTY MASSARO,

                    Plaintiff,

    -against-

THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK,

                    Defendant.

-------------------------------------------------------x

No. 08 Civ. 10678 (LTS)(FM)

### MEMORANDUM OPINION AND ORDER

        Plaintiff Yvonne Hanratty Massaro ("Plaintiff" or "Massaro"), an employee of Defendant The Department of Education of the City of New York ("Defendant" or the "DOE"), brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting claims for violations of her rights under the First Amendment to the Constitution.  Plaintiff alleges that the DOE violated her constitutional and statutory rights by retaliating against her for engaging in protected speech concerning the sanitary conditions of her classroom.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

        Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  The Court has considered thoroughly the parties' submissions and, for the following reasons, Defendant's motion is granted.

## BACKGROUND

The following facts are undisputed unless otherwise noted.[1]  Plaintiff is a tenured

art teacher currently employed by the DOE at Edward R. Murrow High School (the "School").

(Def.'s Rule 56.1 Statement ("Def.'s 56.1 Stmt") ¶¶ 2, 4.)  In the fall of 2005, Plaintiff shared an

art studio classroom with another teacher at the School.  (Id. ¶ 4.)  On December 16, 2005,

Plaintiff informed the School that she had contracted scabies.  (Id. ¶ 5.)  She also informed the

school that she believed the shared classroom was contaminated.  (Decl. of P. Ozgu ("Ozgu

Decl."), Ex. D ("Massaro Cont. Dep."), at 86:25-87:12.)  That day she also filed a

Comprehensive Injury Report with the DOE, specifying that her leg had been injured by mites in

her classroom.  (Ozgu Decl., Ex. E ("Injury Report").)  She took sick leave from December 16,

2005, to January 5, 2006.  (Ozgu Decl., Ex. F ("Application for sick leave").)

After returning to work in January 2006, Plaintiff continued to teach in the shared

classroom.  (Ozgu Decl., Ex. C ("Massaro Dep."), at 38:1-15.)  On January 27, 2006, she

informed the School's Principal, Anthony Lodico, and her Assistant Principal, Spy Kontarinis,

that she was once again suffering from a scabies infection.  (Def.'s 56.1 Stmt ¶¶ 14, 15.)

Principal Lodico sent Plaintiff home and scheduled an appointment for her to receive a medical

examination by the DOE's Medical, Leaves & Benefits Office on February 9, 2006.  (Id. ¶¶ 15,

16.)  Plaintiff was found fit for duty at the February 9 examination and returned to work the next

day.  (Id. ¶¶ 17, 18.)

On an unspecified date after either Plaintiff's first or second scabies infection, the

---

[1]     Facts characterized as undisputed are identified as such in the parties' statements
pursuant to Local Civil Rule 56.1 or drawn from evidence as to which there is no
non-conclusory contrary factual proffer.

shared classroom was cleaned, holes in its ceiling fixed, the walls re-painted, and the room

disinfected and sprayed with bug killing chemicals at Principal Lodico's request. (Id. ¶ 7.)

Plaintiff exhibited no symptoms of scabies after returning to work on February 10, 2006, and no

other cases of scabies were reported at the school. (Id. ¶¶ 8, 18.)

In the winter of 2006, Plaintiff filed an Accident Report with the DOE's payroll office

(Massaro Dep. at 84:12-17), detailing the "unclean working environment" of the classroom, the

cost of her medical care, and the school administration's alleged failures to make timely

improvements to the room, to transfer her to a different room, or to reprimand the teacher with

whom she shared the room and who had allegedly caused its unsanitary condition. (Decl. of S.

Karlin ("Karlin Decl."), Ex. 12 ("Accident Report").)

Plaintiff contends that, over the next several years, DOE staff -- including

Principal Lodico and Assistant Principal Kontarinis -- engaged in retaliatory conduct against her

in response to her complaints about the condition of the classroom (Am. Compl. ¶ 9.)  Plaintiff

alleges that Principal Lodico and his subordinates re-scheduled her classes in a way that required

her to walk up more stairs than before (Massaro Dep. at 40:15-41:13), placed too many special

education students in her classes (id. at 41:22-25), assigned her to inconvenient "sweep" room

monitoring duties (id. at 45:17-46:12), cancelled her TV production class (id. at 84:1-4), either

failed to provide adequate supplies or delayed the receipt of adequate supplies for her classes (id.

at 61:2-25), and subjected her to increased scrutiny by her peers as to whether she was present in

her classroom on time (id. at 43:2-44:8), all in retaliation for her complaints regarding the

scabies and classroom conditions.  While the DOE acknowledges that some of these measures

were taken, such as the cancellation of the TV production class and changes in her course

scheduling, the DOE asserts that they were not motivated by any retaliatory intent and that

Plaintiff cannot in any event prevail on her First Amendment retaliation claim because her complaints did not constitute protected speech.

**DISCUSSION**

Summary judgment is to be granted in favor of a moving party where the "pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A fact is considered material "if it might affect the outcome of the suit under the governing law," "and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson, 477 U.S. at 248). The Second Circuit has explained, however, that "[t]he party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

"Whether public employee speech is protected from retaliation under the First Amendment entails two inquiries: (1) 'whether the employee spoke as a citizen on a matter of public concern' and, if so, (2) 'whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.'" Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Garcetti v. Ceballos,

547 U.S. 410, 418 (2006)).

A public employee engages in constitutionally protected speech when she speaks "as a citizen on a matter of public concern." Garcetti, 547 U.S. at 418. Accordingly, if the plaintiff "either did not speak as a citizen or did not speak on a matter of public concern, '[he] has no First Amendment cause of action based on his . . . employer's reaction to the speech.'" Weintraub v. Board of Educ. of City School Dist. of City of New York, 593 F.3d 196, 201 (2d Cir. 2010) (quoting Sousa v. Roque, 578 F.3d 164, 170 (2d Cir. 2009)).

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Weintraub, 593 F.3d at 201 (quoting Garcetti, 547 U.S. at 421). "The Garcetti Court defined speech made 'pursuant to' a public employee's job duties as 'speech that owes its existence to a public employee's professional responsibilities.'" Id. (quoting Garcetti 547 U.S. at 421). The determination of whether an employee is speaking pursuant to an official duty is, however, a "practical one." Garcetti, 547 U.S. at 424. The necessary practical assessment must look beyond formal job requirements: because "formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform . . . the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." Id. at 424-25. In Weintraub, the Second Circuit found confirmation in post-Garcetti decisions by other Circuits of the propriety of a broad approach to the "pursuant to" prong of the test, holding that speech that is not expressly required "may still be 'pursuant to official duties,' so long as the speech is in furtherance of such duties," and concluding that the Weintraub plaintiff's speech -- a

grievance by a teacher concerning the handling of a student who had thrown books at the teacher

in a classroom -- related to the teacher's ability to maintain the classroom discipline necessary

for effective teaching, and was thus "part-and-parcel of his concerns about his ability to properly

execute his duties," and therefore was uttered as an employee rather than as a private citizen.

Weintraub, 593 F.3d at 202-04.  This conclusion was "supported" by the fact that the speech

took the form of a grievance through a channel that would not have been available to an ordinary

member of the public.  Id. at 203 ("[H]is speech ultimately took the form of an employee

grievance, for which there is no relevant citizen analogue.").

       To establish that a public employer's conduct is actionable as retaliation for  First

Amendment-protected speech, the public employee must not only have spoken as a citizen.  The

subject matter of her speech must also have been a matter of public concern.  Garcetti, 547 U.S.

at 418.  Speech is on a matter of public concern when it "relates 'to any matter of political,

social, or other concern to the community.'"  Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir.

2003) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)).  Employee speech on matters of

private concern is not protected by the First Amendment.  Reuland v. Hynes, 460 F.3d 409, 415-

16 (2d Cir. 2006).  Thus when an employee speaks "upon matters only of personal interest,

absent the most unusual circumstances, a federal court is not the appropriate forum in which to

review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the

employee's behavior."  Connick, 461 U.S. at 147.  Whether the speech in question addresses a

matter of public concern "must be determined by the content, form, and context of a given

statement, as revealed by the whole record."  Id. at 147-48.

       The undisputed factual record here demonstrates that Plaintiff's complaints

regarding the sanitary conditions in her classroom and the health conditions that arose from them

were made pursuant to her duties as an employee.  Classroom safety, the practical availability of

proper teaching space and the teacher's ability to perform her duties in the space are, like

classroom discipline, "indispensable prerequisite[s] to effective teaching and classroom

learning."  See Weintraub, 593 F.3d at 203.  Communications of concerns about such matters

are, thus, part and parcel of a teacher's duties as a public employee and do not enjoy First

Amendment protection.  The fact that the communications were made as part of internal safety

and medical absence-related reports concerning the particulars of Plaintiff's experience as a

teacher in the classroom and the relationship between her medical symptoms and exposure to the

classroom supports this conclusion.  Such reporting channels are established and used in

connection with the public employment relationship and do not have a private citizen analogue.

Cf. Id.;  See also, Felton v. Katonah Lewisboro Sch. Dist., No. 08 Civ. 9340(SCR), 2009 WL

2223853, at *5 (S.D.N.Y. July 27, 2009) (holding that the plaintiffs' complaints regarding "the

physical state of the classroom in which they taught" were made pursuant to their duties as

educators to ensure "that a classroom is well supplied, safe, and conducive to learning.").

Regardless of whether Plaintiff was formally tasked with alerting the school to the unsanitary

condition in her classroom, ensuring that the room provided a safe learning environment was

part of her duties as an educator.

       Furthermore, Plaintiff has failed to proffer any facts sufficient to raise a genuine

issue as to whether her complaints related to a matter of public concern rather than personal

interest.  Her submissions were made in connection with requests for compensated sick days,

cleaning of the classroom and the transfer of an allegedly unsanitary person with whom she

shared the classroom.  Their content is focused on Plaintiff's personal injuries, the cost of her

medical care, and her frustrations with the School's administration.  Nowhere in her Accident

Report, Injury Report, Deposition, or any other evidence submitted to the record does she mention her students or any concern for their health.  While the fact that a plaintiff has personal motivations for speaking does not preclude a finding that she spoke on matters of public concern, "an employee who complains solely about his own dissatisfaction with the conditions of his own employment is speaking upon matters only of personal interest." Sousa, 578 F.3d at 174 (internal quotations omitted).  Plaintiff fails to raise any question of fact as to whether she spoke on any issue apart from her own dissatisfaction with her personal working conditions.

The undisputed elements of the factual record, read in the light most favorable to Plaintiff, indicate that her complaints about classroom sanitation and health issues were not made in the capacity of a private citizen regarding matters of public concern but were, rather, made pursuant to her duties as a public employee and focused on personal interests.  Plaintiff therefore cannot establish that her speech was protected by the First Amendment and Defendant is entitled to judgment dismissing the complaint as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment dismissing the complaint is granted in its entirety.

This memorandum opinion and order resolves docket entry no. 22.

The Clerk of Court is requested to enter judgment in Defendant's favor and close this case.

SO ORDERED.

Dated: New York, New York
       June 3, 2011

LAURA TAYLOR SWAIN
United States District Judge